# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS T. FERGUSON, | ) |
| Petitioner, | ) Civil Action No. 08 - 248J |
| v. | ) Magistrate Judge Lisa Pupo Lenihan |
| RAYMOND LAWLER, Superintendent of S.C.I. Huntingdon, et al, | ) |
| Respondents. | ) |

## MEMORANDUM OPINION

Petitioner, Douglas T. Ferguson, a state prisoner incarcerated in the State Correctional Huntingdon, Pennsylvania, has petitioned, through counsel, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction and sentence in the Court of Common Pleas of Clearfield County for his conviction of burglary, robbery and aggravated assault. For the reasons that follow, the Petition should be denied.

### A. Relevant Facts

The record evidence reveals the following. On October 14, 1996, Petitioner and his co-conspirator Robert Hoy, entered the home of Mr. and Mrs. Donald Harter disguised in Halloween masks, beat the couple, tied them up, and robbed them. Following a joint trial, a jury found them guilty of robbery, conspiracy to commit robbery, aggravated asault, simple assault, unlawful restraint, burglary, theft by unlawful taking and receiving stolen property. Petitioner was sentenced and then re-sentenced to an aggregate term of imprisonment of from thirty-two and one-half (32½) to sixty (60) years. Following restoration of his appellate rights, Petitioner filed a direct appeal and a petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA). Having completed

his collateral attack in the state courts, Petitioner filed with this Court a petition for writ of habeas corpus pursuant to 28 U.S.C.§ 2254 raising the following claims.

1. Trial Counsel rendered ineffective assistance of counsel by failing to include in the certified record on his direct appeal, the preliminary hearing transcripts, which precluded review of a constitutionally improper identification of the defendant which ultimately led to his conviction.

2. Trial Counsel rendered ineffective assistance of counsel by failing to timely object to juror misconduct, when jurors discussed the case prior to deliberation.

3. Trial Counsel rendered ineffective assistance of counsel by failing to timely object and properly preserve and appeal the issue of the Commonwealth's failure to produce discovery related to receipts identifying the customers' names and amounts of money allegedly paid to the complainant prior to the robbery.

He raised these claims during his PCRA proceeding.

## B. Standard of Review

In describing the role of federal habeas proceedings, the Supreme Court of the United States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.§ 2254(d).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir.2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Few state court decisions will be "contrary to" Supreme Court precedent. "Clearly established Federal law" should be determined as of the date of the relevant state-court decision. Greene v. Palakovich, Civil No. 07-2163, 2010 WL 2134575 (3d Cir. May 28, 2010).

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the

particular … case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Id*. (quoting Williams, 529 U.S. at 407).

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id*. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)). Where the state court fails to adjudicate or address the merits of a petitioner's claims, the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact. Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

### C. Ineffective Assistance of Counsel

Petitioner's first three claims assert ineffectiveness of counsel. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (*quoting* Strickland v. Washington, 466 U.S. 668, 684 (1984)). *See also* Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) (the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and 2) counsel's

4

unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." *Id*. at 689. The question is not whether the defense was free from errors of judgement, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. *Id*.

The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*, 466 U.S. at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome. *Id*. A defendant is not entitled to relief unless he makes both showings. *Id*. at 687. The Strickland standard applies equally to appellate counsel. Smith v Robbins, 528 U.S. 259, 285 (2002).

In analyzing Petitioner's claims under the two-part test announced in Strickland, this Court must apply the standards set forth in section 2254(e) concerning the presumption of correctness applicable to state court factual findings. The question of effectiveness of counsel under Strickland is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations. Berryman, 100 F.3d at 1095. In this regard, a state court's finding that counsel

5

had a trial strategy is a finding of fact to which the presumption applies. *Id*. Likewise, a state court's determination that a decision was a tactical one is a question of fact. *Id*. A state court's determination of whether such strategy or decision was reasonable is a question of law. *Id*. *See also* McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir.) ("[A] state court's conclusion that counsel rendered effective assistance is not a finding of fact subject to deference by a federal court."), *cert. denied*, 510 U.S. 1028 (1993).

1. Failure to file preliminary hearing transcripts

Petitioner's first claim is that trial counsel rendered ineffective assistance of counsel by failing to include in the certified record on his direct appeal, the preliminary hearing transcripts, which precluded review of a constitutionally improper identification of the defendant which ultimately led to his conviction. In support of this claim, Petitioner, through his counsel, makes the following assertions.

The complaining witness in this case, Donald L. Harter, was the victim of a 1996 robbery. Mr. Harter was forcibly robbed by two assailants wearing Halloween masks or stocking caps during the robbery. The first police officers on the scene obtained a description from Mr. Harter of his assailants. Mr. Harter described his first assailant as being 6' 3", 6' 4" or 6'5", wearing a covering to his face and carrying a knife. Mr. Harter described the second subject as being probably around 5' 9". During the initial interview, Mr. Harter was unable to identify any of his assailants or give any other information about his assailants. It was not until the police suggested to Mr. Harter the appellant's name and identity as the attacker, that Mr. Harter was able to identify his assailant. Mr. Harter had little opportunity to make observations of the assailant, as the assailant was wearing a Halloween mask that showed very little flesh and covered up his face. Mr. Harter could see the

assailant's eyes where a person normally would wear eyeglasses and his assailant's mouth. After being notified of the identity of Mr. Ferguson, Mr. Harter identified Mr. Ferguson at a preliminary hearing and at trial as one of the assailants. Mr. Harter's trial testimony indicated that he was able to make an identification based upon the "staring eyes" and "mad dog" teeth. Mr. Harter testified that the assailants came in the door, grabbed him and threw him flat on his back. It was at this point in time that Mr. Harter was able to make observations that led to an in-court identification. Mr. Harter testified that he did not see any facial hair on his assailant Mr. Ferguson. Mr. Harter was unable to describe any details of his assailant's eyes or any specifics regarding his mouth. At the time of the robbery, Mr. Ferguson had a black eye and a moustache. Mr. Harter did not have sufficient opportunity to make reliable observations as to his assailants and could only identify Mr. Ferguson after the identity of his assailants had been suggested by the police.

A pre-trial identification of a criminal defendant is inadmissible at trial if the identification was made at a confrontation that "was so suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law." Neil v. Biggers, 409 U.S. 188 (1972). To evaluate the suggestiveness of an identification, a court must examine the totality of the circumstances. *Id*. at 199. Factors to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witnesses at the confrontation, and the length of time between the crime and the confrontation." *Id*. at 199-200. The defendant has the burden of proving that the identification procedure was impermissibly suggestive. United States v. Lawrence, 349 F.3d 109 (3d. Cir. 2003) (citing Reese v. Fulcomer, 946 F.2d 247, 259 (3d Cir. 1991)).

In Biggers, the Supreme Court concluded that although a station house show up may have been suggestive, there was no substantial likelihood of misidentification and thus evidence concerning the out-of-court identification made by a rape victim was admissible. The Court noted that the victim spent half an hour with her assailant; she was within him under adequate artificial light in her house and under a full moon outdoors; she faced him directly at least twice; her description of the assailant included his approximate age, height, weight, complexion, skin texture, build and voice; and she testified that she had no doubt that the defendant at trial was the man who raped her. *Id*. at 200. Furthermore, she made no previous identification at any of the other show-ups, lineups or photographic showings conducted by police. *Id*.

Petitioner filed a motion to suppress the victim's identification as unduly suggestive pointing to the transcript of the preliminary hearing. After conducting a hearing on this issue, the Trial Court denied suppression of the identification finding that the victims' identifications had sufficient indicia of reliability.

> [The victims] Mr. and Mrs. Harter testified at the preliminary hearing on December 21, 1996, as to various identifying features of both Defendants with Mr. Harter identifying [Appellant] as being one of the two attackers. *** Defense counsel for [Appellant] did not allege, prior to the appeal, that the police engaged in any suggestive behavior at the time of the identification at issue.
>
> In this case, during the preliminary hearing, the victim Mr. Harter testified that he deliberately studied the Defendants in order to try to identify them at a later date. Mr. Harter testified that during the incident, when studying the features of the taller Defendant, he realized he recognized him and "had to put a name to on it." Most importantly, Mr. Harter went on to say that during the attack, he knew the eyes and knew the mouth, and especially the voice of [Appellant] and he knew it had to be [Appellant]. Mr. Harter unequivocally stated that the teeth, eyes and voice of the attacker were so familiar that he knew it was [Appellant], because he knew the whole Ferguson family. In addition, Mr. Harter testified to a

specific angry confrontation with [Appellant] a few years prior and had an opportunity to clearly hear [Appellant's] voice in an angry agitated state. This is the same voice Mr. Harter attributed to his attacker.

After the attack, Mr. Harter could not recall whether police supplied him with a name first or whether he told the police who his attacker was first. Clearly, at some point, police informed Mr. Harter while he was at the hospital that they had arrested [Appellant]. Simply informing the victims of the arrest and who was arrested is not impermissible suggestiveness by the police as Mr. Harter had already formed an opinion as to identification. At this point, as to the taller assailant, Mr. Harter had already recognized the features and attributed them to a Ferguson.FN4

> FN4. Mr. Harter testified that the Ferguson family was large and many had similar facial features, and he was unable to immediately put a first name with the face of the assailant.

Even, assuming arguendo, that the police informing the victims of the identity of the suspects, specifically the first name of [Appellant] Ferguson, is considered to be suggestive behavior, the identification is still admissible if it is reliable and has an independent basis. *** The record reflects, in this case, that Mr. Harter had ample opportunity to observe features of both Defendants at the time of the attack. In regard to [Appellant], Mr. Harter testified that he knew [Appellant] prior to the incident and he had known the family for quite some time. In addition, Mr. Harter testified that he had a prior angry confrontation with [Appellant], face to face, on an earlier occasion. Mr. Harter stated unequivocally that he recognized Appellant Ferguson as the taller man. His description of the Defendants, particularly [Appellant], were [sic] corroborated by the other victim of the attack, Mrs. Harter. *** The identification of [Appellant] was crystalized by Mr. Harter before any police involvement.

Mr. Harter's testimony reflects he knew it was a Ferguson before he ever talked to police. Therefore the pretrial identification was deemed admissible and proper.

Based on a victim's prior contact and altercation with [Appellant], the opportunity for the victim to view various aspects of both Defendants, including hands, eyes, speech, voice, build, due to his

9

> high level of certainty at who his attacker was, and corroboration by the other victim, Mrs. Harter, and the fact that his recognition of [Appellant] occurred during the attack, the pretrial identification has an independent basis and was properly admissible. Based on the short time between the crime itself and his description being given to police, the identification of [Appellant] bore sufficient indicia of reliability.

Doc. No. 1-1, pp. 23-25. Based on this evidence, the Superior Court held that the ineffectiveness of counsel claim for failure to include a copy of the preliminary hearing transcripts lacked merit. *Id*. at p. 25.

In <u>Kimmelman v. Morrison</u>, 477 U.S. 365 (1986), the Court determined that a habeas petitioner could raise a claim of ineffective assistance when his trial counsel failed to file a timely pre-trial motion to suppress evidence allegedly obtained in violation of the Fourth Amendment. Notwithstanding, the Court instructed that the mere failure to file a timely suppression motion does not constitute *per se* ineffective representation. <u>Kimmelman</u>, 477 U.S. at 383. To demonstrate actual prejudice under the second prong of the <u>Strickland</u> test, a petitioner must prove that the motion would have been granted and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. <u>Kimmelman</u>, 477 U.S. at 375.

Here, Petitioner did file a suppression motion, which was not granted as to Mr. Harter's pretrial identification. Petitioner's has failed to make any attempt whatsoever to show that the state court's decisions are clearly contrary to federal law as determined by the Supreme Court of the United States or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States as is his burden in requesting habeas relief. In order for Petitioner to succeed on his claims it is not enough to convince a federal court that in its independent judgment the state court applied the law incorrectly, it must have applied the law in an "objectively

unreasonable manner." Bell v. Cone, 535 U.S. at 698-699. Petitioner has not made such a showing and, therefore, is not entitled to habeas relief with respect to his first claim.

2.      Trial counsel was ineffective for advising Petitioner not to testify at trial.

Next, Petitioner alleges that trial counsel rendered ineffective assistance of counsel by failing to timely object to juror misconduct when jurors discussed the case prior to deliberation. Due Process guarantees a criminal defendant a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Smith v. Phillips, 455 U.S. 209, 215 (1982). The remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias. *Id*. *See also* Remmer v. United States, 347 U.S. 227, 230 (1954) (Where possible juror bribery occurred, the Supreme Court instructed the trial judge to "determine the circumstances, the impact thereof upon the juror, and whether or not [they were] prejudicial, in a hearing with all interested parties permitted to participate."). However, courts should be reluctant to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences. United States v. Sun Myung Moon, 718 F.2d 1210, 1234 (2d Cir. 1983). Nevertheless, a trial court is required to hold a post-trial jury hearing when reasonable grounds for investigation exist. Moon, 718 F.2d at 1234. "Reasonable grounds are present when there is clear, strong, substantial and incontrovertible evidence, that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant." *Id*. (internal citation omitted). *See also* United States v. Barshov, 733 F.2d 842, 851 (11th Cir. 1984) ("The duty to investigate arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality.").

In reviewing this claim during Petitioner's PCRA proceedings, the Superior Court held as follows.

> Appellant first contends trial counsel was ineffective for failing to raise an objection to jury misconduct in discussing the case prior to deliberations. At the evidentiary hearing held on Appellant's PCRA petition, he testified that he and counsel learned from a court employee that two jurors were discussing his guilt in a restroom on the second day of trial prior to deliberations. Appellant said his trial counsel told him that a court employee "heard two of the male jurors down there discussing my guilt or innocence. One was arguing that I wasn't guilty, and the other one was arguing that I was guilty, and that they weren't going to have - they was [sic] going to have a hung jury if they couldn't come to any conclusion on it." Appellant further explained that he and counsel discussed alerting the trial judge to the circumstance but decided to wait for the verdict and pursue the issue on appeal if necessary.
>
> * * *
>
> The record reflects that Appellant's jury trial was held on September 23 and 24, 1997. Prior to the start of the testimony, the trial court instructed the jury to "keep an open mind [and] not attempt to arrive at any conclusions as to the facts and verdicts until [it had] heard all of the evidence and testimony to be presented, the closing arguments of counsel, and the charge of the Court on the law." At the conclusion of the first day of testimony, the trial court reminded the jurors not to discuss the case with anyone. The testimony concluded on the second day of trial, after which the trial court gave the jury its instructions and noted that its verdict must be unanimous. The record also reveals that, after the jury reached its verdict, counsel for Appellant and his co-defendant asked that the jurors be polled. Each of the jurors responded that he or she agreed with the guilty verdicts.
>
> Appellant's claim is without merit because he has failed to establish any prejudice as a result of counsel's alleged ineffectiveness. *** Instantly, even assuming Appellant's version of the alleged improper juror communications sometime on the second and final day of trial is accurate, he does no more than make the bald assertion that a new trial is warranted. His contentions fall far short of establishing a reasonable probability that the outcome would have been different since, as is clear from the record, the jury unanimously

> convicted him of his crimes after the trial court's final instructions. As such, even had trial counsel pursued this claim before the trial court or on appeal, he would not have been entitled to relief. Accordingly, counsel could not be ineffective, and we find no merit to this first issue on appeal.

Doc. No. 1-1, pp. 20-21 (internal citations omitted).

Again, Petitioner has not shown that the state courts decision was clearly contrary to federal law as determined by the Supreme Court of the United States. Nor has he demonstrated that the decision is objectively unreasonable. Thus, Petitioner is not be entitled to habeas corpus relief with respect to his second claim.

3.      <u>Failure to object to Commonwealth's failure to produce discovery</u>

In his final ineffectiveness claim, Petitioner asserts that his trial counsel rendered ineffective assistance of counsel by failing to timely object and properly preserve and appeal the issue of the Commonwealth's failure to produce discovery related to receipts identifying the customers' names and amounts of money allegedly paid to the complainant prior to the robbery. In support of this claim, Petitioner makes the following assertions. Mr. Harter first reported to police he was missing somewhere between $500.00 to $1,000.00 in the robbery. After Petitioner was arrested, police advised Mr. Harter that Petitioner had in his possession $1,500.00 in cash. At the same time that Mr. Harter was advised of the $1,500.00 in cash, he was advised by police of the identity of Petitioner. After being advised of this information, Mr. Harter positively identified Mr. Petitioner as the assailant and indicated he was missing a total of $1,400.00 to $1,500.00. Preliminary hearing testimony of Mr. Harter indicated that he normally kept $500.00 to $600.00 onsite, but had three customers pay their bills the day of the robbery, which totaled approximately $900.00. It was the receipt of these three customers' payments that resulted in their being $1,400.00 to $1,500.00 onsite.

13

Trial counsel requested copies of these receipts so that he could confront Mr. Harter and verify or refute his testimony. At the preliminary hearing, trial counsel requested that Mr. Harter turn over the names and receipts to the police of the alleged $900.00 in cash received the day of the robbery. Prior to the trial, trial counsel failed to seek discovery of the customer receipts and failed to cross-examine Mr. Harter on these issues at trial.

The Superior Court decided this claim as follows.

> Once again, Appellant has failed to demonstrate any arguable merit to this claim. Appellant's only citation to the record on this issue is to the criminal complaint filed against him and his counsel's cross-examination of Mr. Harter. The criminal complaint was not introduced at trial, and its relevance to this issue is dubious at best. Additionally, counsel's cross-examination of Mr. Harter revealed that he did not provide names of customers or receipts to the police and that he was simply estimating the amount of money stolen from him on the night of the robbery. Counsel clearly cannot be ineffective for failing to obtain documents which Appellant cannot even demonstrate actually existed or were ever in possession of the Commonwealth. Moreover, Appellant's counsel thoroughly explored Mr. Harter's credibility on the sum of cash taken from him including the change in his estimation of the amount (from $500-1,000 on the night of the robbery to $1,400-1,5– on the date of trial). Consequently, Appellant has failed to establish his counsel's ineffectiveness.

Doc. No. 1-1, p. 26.

Again, Petitioner has not shown that the state courts decision was clearly contrary to federal law as determined by the Supreme Court of the United States. Nor has he demonstrated that the decision is objectively unreasonable. Thus, Petitioner is not be entitled to habeas corpus relief with respect to his third claim.

### D. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). Here, the record fails to show a violation of Petitioner's constitutional rights. Accordingly, a certificate of appealability will be denied. An appropriate order follows.

                                                                         Lisa Pupo Lenihan
                                                                         United States Magistrate Judge

Dated: June 7, 2010